No. 50,713

STATE OF KANSAS, *Appellee,* v. MOSES MOORE, *Appellant.*

(602 P.2d 1359)

Opinion filed December 1, 1979.

*David Michael Rapp,* of Moore and Rapp, of Wichita, argued the cause and was on the brief for the appellant.

*Roger C. Skinner,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, *Vern Miller,* district attorney, and *Alan G. Metzger,* assistant district attorney, were on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal from convictions in two criminal cases which were consolidated and tried together. In case No. 78 CR 629, the defendant, Moses Moore, was charged with aggravated robbery (K.S.A. 21-3427), and kidnapping (K.S.A. 21-3420). The case went to trial on September 18, 1978, but ended in mistrial when the jury was unable to reach a verdict. On September 22, 1978, case No. 78 CR 1659 was filed, charging defendant with corruptly influencing a witness (K.S.A. 21-3806), and the unlawful deprivation of property (K.S.A. 21-3705). Over objection of the defendant, the two cases were consolidated and tried jointly on December 5, 1978. The defendant was convicted on all charges.

The events giving rise to the charges were disputed. The State's evidence showed that on April 1, 1978, the defendant, Moses Moore, knocked on the apartment door of Mark Marion, and asked if Bill McCoy still lived there. When told by Marion that Bill McCoy no longer lived there, Moore asked if he could come in and see a mural which had been painted on one of the apartment walls. Marion admitted Moore into the apartment and

they began discussing a variety of subjects. Marion testified at the trial that Moore began making sexual innuendos, and when asked to leave, pulled a gun on Marion. Marion further testified that Moore removed $60 from his billfold which was lying on the dresser, escorted Marion to a restroom down the hall, and left.

Defendant Moore's version of the event differed greatly. Moore testified that, upon entering the apartment, Marion requested him to perform a homosexual act with him in consideration of payment of $30. Moore testified the act was attempted but never completed. Marion then went down the hall to the restroom. Moore dressed, took his $30, and left. A determination of the charges in this case depended upon whether the jury believed the testimony of Mark Marion or that of the defendant, Moses Moore.

The facts surrounding case No. 78 CR 1659 are also disputed. It appears that one Bruce Foggs met the defendant Moore in May, 1978, and moved in with him at the latter's apartment a few weeks later. Apparently Foggs and Moore had some discussion about this case and the need for a witness who would testify that Marion was a homosexual. Such a witness would strengthen the defendant's position in the trial of case No. 78 CR 629. At the second trial, in proof of the charges in case No. 78 CR 1659, Foggs testified that Moore signed a jail bond for Foggs in exchange for Foggs' agreement to testify as to Marion's homosexuality at Moore's trial. The night before the trial, Foggs had agreed to so testify. Foggs apparently had second thoughts in the matter after discussing the matter with his lawyer and decided that he would not testify on Moore's behalf. At the second trial, Foggs testified that Moore became angry with him and that Moore refused to return certain clothes that Foggs had left in Moore's apartment. Foggs also testified that a diamond ring and a G.I. loan check had not been returned by Moore. The retention of this property was the basis for the charge of unlawful deprivation of property.

Moore testified that it was Foggs who volunteered to testify on Moore's behalf and that Moore at all times told Foggs to either testify truthfully or not to testify at all. Moore further testified that Foggs had requested him to clean the clothing left in Moore's apartment, and Moore was withholding the clothing only until Foggs paid for the cleaning. As noted above, the jury at the second trial found the defendant Moore guilty on all counts.

Moore's first point is that the trial court erred in consolidating cases Nos. 78 CR 629 with 78 CR 1659 for trial. He also claims that the consolidation unduly prejudiced his defense. The joinder for trial of two or more informations against a single defendant is governed by K.S.A. 22-3203. That statute declares in substance that the court may order two informations against a single defendant to be tried together, if the crimes could have been joined in a single information. K.S.A. 22-3202 governs the charging of two or more crimes in the same information and states in part as follows:

"**22-3202. Joinder of charges and defendants.** (1) Two or more crimes may be charged against a defendant in the same complaint, information or indictment in a separate count for each crime if the crimes charged, . . . are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

The defendant contends that the criminal charges contained in the two cases which were consolidated for trial here, are not of the same or similar character nor based on the same act or transaction or connected as part of a common scheme or plan. The State argues that, because the defendant would not have committed the acts giving rise to the corruptly-influencing-a-witness charge but for the aggravated robbery and kidnapping charges, the crimes were necessarily "connected" and properly joined for trial. We have found no Kansas cases exactly in point. However, it should be noted that K.S.A. 22-3202 and K.S.A. 22-3203 correspond to Rules 8 (a) and 13 of the Federal Rules of Criminal Procedure. The federal cases consistently hold that when criminal conduct resulting in a second charge is precipitated by a previous charge, the two are considered sufficiently "connected together" to allow consolidation for trial. For example, "a charge of bail jumping or escape may be deemed sufficiently 'connected' with a substantive offense to permit a single trial, at least where the charges are related in time, the motive for flight was avoidance of prosecution, and appellant's custody stemmed directly from the substantive charges." *United States v. Ritch,* 583 F.2d 1179, 1181 (1st Cir.), *cert. denied* 439 U.S. 970 (1978). Similar results were reached in *United States v. Bourassa,* 411 F.2d 69, 74 (10th Cir. [Kan.] 1969); *United States v. Quinones,* 516 F.2d 1309 (1st Cir.), *cert. denied* 423 U.S. 852 (1975). In *Williams v. United States,* 265 F.2d 214 (9th Cir. 1959), it was held that a charge of

obstruction of justice was properly joined for trial with a charge of statutory rape when the obstruction charge was the result of the defendant's persuasion of the victim in the statutory rape charge to repudiate her earlier statement of intercourse with defendant. Applying the reasoning of the federal cases to the factual circumstances in this case, we hold that the two criminal cases against the defendant Moore were properly consolidated for trial under the Kansas statutes. The crimes of aggravated robbery and kidnapping were "connected together" with the charge of corruptly influencing a witness because the crime charged in 78 CR 629 precipitated the conduct charged in 78 CR 1659. When charges are "connected together," their joinder for trial rests in the sound discretion of the trial court, and such joinder is not reversible error absent abuse of discretion. *State v. McGee,* 224 Kan. 173, 175, 578 P.2d 269 (1978). We find no abuse of discretion by the trial court in this case and hold the defendant's first point to be without merit.

The defendant's second point on the appeal is that the trial court erred in denying defendant's motion for judgment of acquittal on the two charges contained in the second case, 78 CR 1659, because the State failed to introduce evidence showing the venue on the charges was in Sedgwick County. It appears from the record that at no time in the taking of testimony in regard to the charges in the second case did the prosecutor specifically ask any witness if the alleged offenses occurred in Sedgwick County. At the close of the State's case the defendant moved for judgment of acquittal because the State had failed to prove proper venue. In Kansas, venue of an offense is jurisdictional, but the cases do not require that venue be proved by specific questions and answers that the offense occurred in a particular county. Venue may be established by other competent evidence showing the offense was committed within the jurisdiction of the particular court. *State v. Griffin,* 210 Kan. 729, 731, 504 P.2d 150 (1972). We have concluded that the State's evidence in this case was sufficient to establish venue within the guidelines of *State v. Griffin.* In the course of the State's case, Bruce Foggs, the witness defendant is charged with corruptly influencing, testified that he moved in Moore's house at 1104 East 9th in Wichita in May, 1978. Foggs testified that Moore discussed Foggs' false testimony with him while the two were driving "home" from the office of Moore's

attorney. Foggs testified to discussing his testimony with Moore's attorney by telephone, with Moore's coaching, in late July or early August, 1978. Foggs moved out of Moore's house in September, 1978. The retention of Foggs' clothing occurred at Moore's house in Wichita. The evidence before the trial court at the time of the motion for judgment of acquittal was sufficient so that a jury might reasonably conclude that the alleged offenses took place in Sedgwick County. The trial court properly denied defendant's motion for judgment of acquittal.

The defendant's final point is that the trial court erred in limiting the cross-examination of State's witness, Detective George Anderson. This point pertains only to 78 CR 629 involving the kidnapping and aggravated robbery charges. In substance defendant maintains that the trial court erred in unduly restricting defense counsel's cross-examination of Detective Anderson as to Mark Marion's bias against homosexuals. Detective Anderson interviewed Marion on the date of the robbery. The information defense counsel hoped to elicit from Anderson concerned certain statements by Marion regarding his brother Buddy Marion's involvement in "rolling queers," that is, robbing homosexuals. The trial court sustained the objection to this line of questions as immaterial and irrelevant. It should be noted that, in sustaining the objection to this line of questions, the court specifically told defense counsel he could pursue the issue later by recalling Detective Anderson and laying a proper foundation. Defense counsel never took advantage of this suggestion and never re-called Detective Anderson for additional cross-examination. In the course of the trial, the defendant was given full opportunity to cross-examine Mark Marion, the complaining witness, for the purpose of showing his bias and prejudice. We cannot say that the trial court abused its discretion or committed reversible error in limiting the cross-examination of Detective Anderson under the circumstances.

The judgment of the district court is affirmed.

FROMME, J., not participating.